**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES D. HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:05cv445-WHA |
| | ) | (WO) |
| | ) | |
| ALICE E. HENDERSON, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| SIGNATURE BUILDERS, LLC, | ) | |
| | ) | |
| Defendant/Intervenor. | ) | |

**MEMORANDUM OPINION AND ORDER
I.  INTRODUCTION**

This cause is before the court on a Motion for Summary Judgment filed by the Plaintiff James D. Henderson (Doc. #30), and a Motion for Summary Judgment filed by the Defendants Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC (Doc. #31).

The Plaintiff filed a Complaint for Preliminary and Permanent Injunctive Relief and Damages, bringing claims against Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC, for copyright infringement (Count I), conversion (Count II), civil conspiracy (Count III), and breach of fiduciary duty (Count IV).   The court has original subject matter jurisdiction over the copyright claims and supplemental jurisdiction over the state law claims.

The Defendants answered the Complaint and Defendant Alice E. Henderson asserted counterclaims for wrongful dissolution, breach of fiduciary duty, conversion, and breach of contract against Plaintiff James D. Henderson.  Signature Builders, LLC moved to intervene in

the case. The court granted the motion to intervene, and Signature Builders, LLC was designated as a Defendant/Intervenor. Signature Builders, LLC asserted counterclaims for breach of fiduciary duty, conversion, and copyright infringement.

Plaintiff James D. Henderson filed a Motion for Summary Judgment on July 21, 2006 as to the claims asserted by Alice H. Henderson for breach of contract and various claims asserted by Signature.

Defendants Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC ("Defendants") also filed a Motion for Summary Judgment on July 21, 2006 in which they moved for summary judgment on all claims of Henderson against them. The court held oral argument on the pending motions on September 28, 2006. The court also requested additional briefing on specific issues.

For reasons to be discussed, the Plaintiff's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part as moot, and the Defendants' Motions for Summary Judgment are due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movants:

The claims in this case relate to the construction of duplex homes in the Ross Park Subdivision in Auburn, Alabama.  The Plaintiff/Counterclaim Defendant, Henderson, and the Defendant/counterclaim Plaintiff Alice E. Henderson ("AEH") were related by marriage until May 2001, when AEH was divorced from Henderson's brother.

Henderson designed duplexes containing three bedrooms and three bathrooms. Henderson states that he developed designs for the first set of plans and asked Ella Ivey ("Ivey") to draft them.  Ivey was paid from a bank account jointly owned by Henderson and AEH.  Ivey

later disclaimed any ownership interest in the plans, to the extent that she might have had any such an interest. The first set of plans was titled "Twice Sublime" by Henderson.

Henderson showed the Twice Sublime designs to AEH and Danny Phipps. AEH and Phipps had formed a partnership through which they purchased real estate for development. Their partnership, Phad Properties LLC, owned the real estate. AEH made some suggestions for changes to the Twice Sublime plans. Henderson drew new plans which he called the "Biempyeran" plans.

In 2000 and 2001, Henderson and AEH constructed three bedroom and three bathroom duplexes in Phase 1 of the Ross Park subdivision. Phase 1 of the Ross Park subdivision consisted of two duplexes. These duplexes were constructed based on the Biempyeran plans. No duplexes were constructed using the Twice Sublime plan.

Henderson and AEH then formed a company, Signature Builders, LLC, for the purpose of constructing duplexes in Phase 1 of the Ross Park subdivision. Henderson and AEH were the original and only members of Signature. No operating agreement for Signature was ever executed by its members.

Phad Properties, LLC entered into a contract with Donald Allen Development to construct duplexes in Phase 2 at the Ross Park subdivision. A contract was also signed for Phase 3. The plans for these duplexes were drawn by David Northcutt, based on the Biempyeran plan. Phase 2 was completed in late 2003. Phase 3 was completed in late 2004.

In January 2004, Henderson's attorney wrote a letter to AEH claiming a copyright interest in the Biempyeran plan.

Henderson signed articles of Dissolution for Signature in April 2004. He did not seek or obtain AEH's consent, but represented that he had done so.

Henderson filed for and subsequently received Certificates of Registration from the United States Copyright Office for the Biempyeran plans in January 2004 and the Twice Sublime Plans in March 2004. Henderson used the Biempyeran plans to build four duplexes.

## IV. <u>DISCUSSION</u>

A. Defendants' Motion for Summary Judgment as to Plaintiff's Claims Against AEH, Daniel W. Phipps, and Phad Properties, LLC

The Defendants have moved for summary judgment as to each of the claims asserted by Henderson against them.

### 1. Copyright Infringement

The first claim by Henderson as to which the Defendants have moved for summary judgment is one for copyright infringement. In order to prove a claim of infringement a plaintiff must show (1) that he owns a valid copyright in the work and (2) copying by the defendant. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982). "While the burden of persuasion as to the validity of the copyright rests with the plaintiff in an infringement action, once he produces a copyright certificate he establishes a prima facie case of validity of his copyright and the burden of production shifts to the defendant to introduce evidence of invalidity." *Id.* at 826.

The Defendants have moved for summary judgment, arguing in their written briefs that the copyrights claimed by Henderson are not valid, that the work is not copyrightable, that the claim is barred by the doctrine of laches, that Henderson is estopped by unclean hands from

5

claiming infringement, and that any infringement on the Defendants' part was innocent. The court will address each of these issues in turn.

### a. Copyright Invalidity

The Defendants contend that Henderson's copyrights are not valid because he omitted crucial information from the application. While "omissions or misrepresentations in a copyright application can render the registration invalid," there must be "intentional or purposeful concealment of relevant information" for a court not to uphold the copyright. *Original Appalachian Artworks, Inc.*, 684 F.2d at 828.

The Defendants state that Henderson listed himself as sole author and did not disclose that Ivey drew the plans. The Defendants also state that in the application for the Biempyeran plan, Henderson did not disclose that the authors of the ideas which differentiate Biempyeran from Twice Sublime were AEH, Phipps, and Henderson. The Defendants identify moving the porch, creating a closet, reducing the living room size, and eliminating living room columns as ideas contributed by AEH and Phipps to the Biempyeran plans. The Defendants further state that Henderson did not disclose that AEH and/or Signature had a financial interest in the plans because they paid for their preparation.

First, as to the Defendant's contention that the omission of Ivey as the person who drew the plans invalidates the copyright, Henderson provides evidence that Ivey was merely a draftsperson. Ivey states in an affidavit that she did not design any aspect of the duplex and instead prepared drawings according to the design drawings and directions given to her by Jim

Henderson. Affidavit of Ella Ivey. The only evidence that Defendants cite in response is the fact that Henderson obtained a letter from Ella Ivey disclaiming any ownership in the plans.

As is stated in a treatise often relied on in copyright cases, to be considered an author, one's contribution must be of authorship and "physical labor does not make the grade . . . ." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 6.07[A][2].

In a Fifth Circuit decision, a group designed and drew an image and asked a t-shirt printer to transfer the image to cloth through a silkscreen process. *Lakedreams v. Taylor*, 932 F.2d 1103 (5th Cir. 1991). The silkscreener claimed that he became the author because he reduced the idea to a tangible, fixed expression. The court concluded, however, that the evidence was that the silkscreener merely transposed the expression at the direction of the designer. *Id.* at 1108. Therefore, the designers were the authors entitled to copyright protection even though they did not "perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Id.* (*quoting Andrien v. Southern Ocean Co. Chamber of Commerce*, 927 F.2d 132, 135 (3d Cir. 1991)).

In a supplemental brief, the Defendants have asserted the argument that Ivey should be considered to be the owner of the copyright under the Eleventh Circuit's decision in *M.G.B. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990). The Defendants argue that Ivey actually created the tangible expression of ideas and should be considered the author under the "work-made-for-hire" doctrine.

Payment for work which is the subject of a copyright as potentially creating a copyright interest is governed by the work- made-for-hire doctrine. Under 17 U.S.C. § 201, work made for hire is work prepared by an employee within the scope of his or her employment, or work

specially ordered or commissioned for use under specific circumstances not applicable here. *See M.G.B. Homes, Inc.*, 903 F.2d at 1492 (stating "architectural drafting does not fall within the nine enumerated categories of activities which may be done by independent contractors 'for hire'").

In *M.G.B. Homes, Inc.*, the court analyzed whether the work was prepared by an employee or an independent contractor under agency principles. *Id.* at 1491. M.G.B. identified itself as a work-made-for-hire author of an advertising flyer. The only contribution M.G.B. made to the final drawings, however, was a thumbnail sketch of the floor plan which was provided to the draftsman. *Id.* at 1493. The court held that the draftsman in the case was an independent contractor and that the work was not a work-made-for-hire. *Id.* at 1492.

While the evidence in this case may support a finding that Ivey was an independent contractor rather than an employee, there is another basis for distinguishing *M.G.B. Homes* from this case. The evidence presented to the court is that Henderson provided design drawings to Ivey and that she prepared drawings according to the design drawings and "did not design any aspect of the duplex." Affidavit of Ella Ivey at ¶ 2. The only evidence before the court, therefore, is that the design was created by Henderson. Accordingly, failing to disclose that Ella Ivey drafted the plans does not appear at this point in the proceedings to be a basis for invalidating the copyright.

As stated earlier, the Defendants also contend that Henderson should have disclosed that the authors of ideas which differentiate the Biempyeran plan from the Twice Sublime plan included AEH and Phipps. In response, Henderson presents evidence that after changes were suggested by AEH and Phipps, Henderson modified the Twice Sublime plans and named the

modification Biempyeran, and that neither AEH nor Phipps made any of the drawings. Affidavit of James Henderson.

"As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). In other words, the statutory protection extends to the written or printed expressions of ideas, not the ideas themselves. 17 U.S.C. § 102(b).

The Supreme Court has endorsed the idea that "author" means originating something as its "master mind." *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)(citation ommitted). Building on this definition, three circuits have determined that to establish that there are joint authors there must be independently copyrightable material intended to be an inseparable whole, and the person claiming to be an author of a joint work must prove that both parties intended each other to be joint authors. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233-34 (9th Cir. 1999); *Thomson v. Larson*, 147 F.3d 195, 205 (2d Cir. 1998); *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994).

Although *M.G.B. Homes* is a case primarily involving a question of agency in the context of a work made for hire, the Eleventh Circuit also examined whether the involvement of a client in the preparation of architectural plans should be considered co-authorship, and applied a definition consistent with other circuits. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990). In *M.G.B. Homes*, the court reasoned that ideas conveyed to the author of a copyrighted work were not separately copyrightable. *Id.* at 1493. The court cited approvingly language from a district court decision that the failure to have created or prepared the work

within the meaning of the statute barred an assertion of a copyright interest even as a joint author of the plans. *Id.*

The evidence before the court is that AEH made some suggestions, which may have been written down in some manner, and that Henderson drew the final plans. The distinction between this situation and the drafting of the plans by Ivey is that AEH purportedly made suggestions which Henderson incorporated as changes to the plan, whereas Ivey merely prepared finished drawings without contributing ideas to design made by Henderson. With respect to Henderson's actions incorporating suggestions by AEH, as counsel for the Plaintiff pointed out at oral argument, at most there is a question of fact as to the extent to which AEH's contributions were incorporated into the plans. There has not, however, been any evidence presented at this stage in the proceedings that Henderson and AEH intended to be joint authors. Therefore, there is at least a question of fact sufficient to defeat the motion for summary judgment on this basis.

A second aspect of the argument by the Defendants is that AEH and/or Signature had a direct financial interest in the use of both plans because AEH and/or Signature paid for their preparation. It is unclear why the Defendants contend that the omission of AEH and/or Signature's financial contribution invalidates the copyright registration. To the extent that they are referring to the work-made- for- hire doctrine referred to above, Henderson was not an employee of AEH.

As to Signature's financial interest as an assignor of the informal partnership, Henderson argues that there is no evidence of any assignment of rights in any copyright to Signature.

"Ownership of a copyright may be transferred in whole or in part by any means of conveyance," and "[t]he owner of any particular exclusive right is entitled, to the extent of that

right, to all the protection and remedies accorded to the copyright owner." 17 U.S.C. § 201(d)(1)-(2).

Signature's theory of authorship is that changes jointly made by AEH and Henderson meant that AEH and Henderson are co-authors of a joint work, that this work was an asset of their statutory partnership, and that Signature, as successor in interest to the partnership, succeeded to ownership of the copyright. Even if the lack of a written assignment is not a bar under the statute, because there is insufficient evidence to support a finding of co-authorship as a matter of law, Signature's theory of a financial interest does not establish that Signature is entitled to summary judgment.

It also appears that the Defendants are arguing that Henderson's copyright is invalid because the original designs he made borrowed from earlier works drafted by someone else. Another district court has addressed a similar argument and reasoned that an "argument of copyright invalidity based on the allegedly 'derivative' nature of [the]designs is also unpersuasive. Courts have established that a work must borrow substantially from the expression of ideas, not the ideas themselves, to be considered 'derivative.'" *Berg v. Symons*, 393 F. Supp. 2d 525, 541 (S.D. Tex. 2005). There is no evidence before the court at this point in the proceedings that Henderson borrowed from the expressions of previous ideas, rather than the ideas themselves.

### b. Copyrightability of the Plans

The Defendants' next contention is that the work copyrighted by Henderson is not copyrightable. The Defendants cite to cases for the proposition that the design elements in Henderson's work are merely utilitarian and functional and therefore not subject to copyright.

Alternatively, the Defendants state that because no duplexes were built using the Twice Sublime plan, neither Phad, AEH, nor Phipps could have infringed the copyright.

It has long been the law in this circuit that

> the architect who originates a set of blueprints for a dwelling is as much an author for copyright purposes as the writer who creates an original novel or the dramatist who pens a new play. This authorship concept is no more than one facet of the essence of that which merits copyright protection-originality. However, while such originality is the test for copyrightability, it does not extend so far as to require that novelty or invention, which is the sine qua non for patent protection, be present.

*Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 897 -898 (5th Cir. 1972).[1]  Henderson has provided an affidavit in which he states that he created plans independently using original ideas for the arrangement and configuration of the duplex depicted in the plans.  Affidavit of James D. Henderson.  He also states that he made the modifications of the Twice Sublime plans to create the Biempyeran plans.  Therefore, the arguments by the Defendants regarding unique design elements in the plans pursuant to which duplexes were built does not establish copyright invalidity as a matter of law.

c.  Laches

The Defendants' next challenge to the efficacy of Henderson's copyright infringement claim is that the claim is barred by the doctrine of laches.  The Defendants state that Henderson was aware that the work for which he claimed ownership was being used by Phad to construct duplexes in late 2002 and 2003, but he provided no notice to the Defendants that he was claiming ownership of any copyright until a letter dated January 20, 2004.  The Defendants also

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

state that Henderson did not affix a copyright notice to the work until 2004, and did not provide a copy of the work showing the copyright notice to AEH, Phipps, or Phad.

In a special concurring opinion, Judge Birch of the Eleventh Circuit has noted that there is a circuit split on whether it is appropriate to consider a laches defense where an infringement action is brought within the statutory three-year period of limitation, and that the Eleventh Circuit has not addressed this question. *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1235 n.3 (11th Cir. 2002) (Birch, J., concurring). Even where laches has been applied, however, it has been applied to evaluate the degree of delay between the infringement and the filing of an action to enforce copyright, not delay in filing for copyright registration. *Id.* Therefore, the laches defense articulated in this case is unavailing.

### d. Estoppel

The Defendants next assert the doctrine of equitable estoppel which applies in copyright cases to prevent claimants from recovering when they are aware of infringing conduct, but have acted "in a way that induc[ed] the infringer reasonably to rely upon such action to his detriment." *Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1152 (S.D. Ala.1996); *see also Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991).

The Defendants argue that Henderson should be estopped as a matter of law from asserting infringement claims because he knowingly allowed Phad to proceed with the construction of duplexes in Phases 2 and 3 of Ross Park, but did nothing to assert his rights until the construction was underway.[2]

---

[2] The court is not persuaded by the argument that the cumulative effect of Henderson's implied consent to construction, his failure to disclose information to the Copyright Office, and his wrongful dissolution of Signature should bar his infringement claim. Even if this theory

From the facts presented by the parties, evaluated in a light most favorable to the non-movant, AEH had a discussion with Henderson about participating in Phase 2 of construction of duplexes in November 2002, Henderson Dep. at page 136:1–15, and Henderson said he would not build under the conditions he had built before. *Id.* at 136:17-18. Phad then entered into a contract and Phase 2 was completed in August of 2003. In January 2004, Henderson's attorney sent a letter to AEH notifying her of Henderson's intent to claim copyright protection. Phase 3 was completed in late 2004, but the Defendants argue that prior to that time, expenses had been incurred which could not be recouped.

Henderson points out that the copy of the plans provided to Northcutt to design the Phase 2 and 3 plans was stamped, "Unlawful to duplicate without the written permission of Jim Henderson." He states, therefore, that he asserted a copyright interest prior to the construction of Phases 2 and 3.

The Defendants respond that the stamp was created to protect all of the parties' rights in the plans. The Defendants cite to Phipps' Deposition in which he states that Phipps, AEH, and Henderson discussed putting a stamp on the plans and that Henderson agreed to do it. Phipps Dep. at page 78:18-79:1. Phipps further states that the stamp was discussed because of "the fear that Alice had from prior plans being duplicated." *Id.* at 77:5-6.

In his deposition, Henderson denies that he had a conversation with Phipps about the stamp, but answered, "to the best of my knowledge, we were," when asked the following question: "were you and Danny and Alice in agreement that you didn't want the plans used to

---

were viable, however, there are questions of fact which have not yet been resolved upon which this theory relies.

build structures at Ross Park, used in other subdivisions? Were you in agreement as to that?" Henderson Dep. at page 134:8-12.

The court must conclude that there are questions of fact as to Henderson's assertion of his copyright interest which have to be resolved with regard to the defense of equitable estoppel. Additional issues of fact exist with respect to Phase 3 and the irrevocable expenditures which allegedly had been made at the time of notice. Therefore, while a defense of equitable estoppel ultimately may be successful, or partially successful, at this point in the proceedings, the court cannot conclude as a matter of law that Henderson's claims are barred by equitable estoppel.

### e. Innocent Infringement

The Defendants also assert that even if they infringed on a copyright of Henderson's, their infringement was innocent. Henderson responds that the language of the stamp on the plans belies any innocence claim, and that Phase 3 was built after actual knowledge of Henderson's claim. For the reasons discussed above, the court concludes that questions of fact have been raised as to both of these issues so that summary judgment cannot be granted as to Henderson on the claim that any infringement in this case was innocent.

### 2. State Law Claims

Henderson asserted claims for conversion and civil conspiracy. In the supplemental brief filed after oral argument, Henderson has consented to the dismissal of these claim on the basis of preemption by the Copyright Act. *See* Doc. # 46 at page 2.

Henderson also asserted a claim against AEH for breach of fiduciary duty. In his response to the Defendants' Motion for Summary Judgment Henderson "concedes that the claim is due to be dismissed as a matter of law." Plaintiff's Response (Doc. #39) at page 26.

Accordingly, summary judgment is due to be GRANTED as to the breach of fiduciary duty claim.

      B.  Plaintiff's Motion for Summary Judgment as to Claims by AEH and Signature

The only claim asserted by AEH against Henderson as to which Henderson has moved for summary judgment is a claim for breach of contract.  Henderson has also moved for summary judgment as to a breach of contract claim asserted by Signature and a copyright infringement claim by Signature.

      1.  Breach of Contract

Before the court addresses the merits of the Motion for Summary Judgment brought by Henderson as to breach of contract claims, it is necessary to clarify the claims which are asserted in this case.

In his Brief in Support of Plaintiff's Motion for Summary Judgment, Henderson sets out five claims as being asserted by Signature in its counterclaim against him, citing to Exhibit A of the Motion to Intervene.  Exhibit A of the Motion to Intervene, however, is the Complaint filed by AEH and Signature in state circuit court.  Exhibit B to the Motion to Intervene contains the claims asserted by Signature in this case as an intervening Defendant.  According to Exhibit B, Signature asserts counterclaims against Henderson for breach of fiduciary duty, conversion, and copyright infringement.  The Defendants confirmed at oral argument that there is no breach of contract claim asserted by Signature against Henderson.  Therefore, the Motion for Summary Judgment filed by Henderson is due to be DENIED as moot as to any alleged breach of contract counterclaim by Signature.

In the breach of contract counterclaim which AEH filed against Henderson in this case, AEH claims that Henderson "executed the Operating Agreement" for Signature in which Henderson agreed to make allocations and distributions equally to the Members of Signature and that dissolution of the Company was only to occur upon a vote of the membership.  Doc. #8 at ¶ 27.  The Counterclaim states as follows:

> Henderson breached his contractual obligations to AEH by wrongfully dissolving Signature, failing to make allocations and distributions of Signature funds in accordance with the Operating Agreement and failing to manage Signature in accordance with the terms of said Operating Agreement.

*Id.* at ¶ 28.

Henderson states, citing to evidence, that no Operating Agreement was ever drafted or executed.  Although there was a form Operating Agreement, it was never signed. It was conceded at oral argument that no written Operating Agreement was ever executed.  Therefore, the Motion for Summary Judgment is due to be GRANTED as to the breach of contract counterclaim asserted by AEH against Henderson.

In response to Henderson's Motion for Summary Judgment, the Defendants argue in brief that AEH and Henderson operated as a statutory partnership prior to the formation of Signature so that Henderson breached his contract with AEH and Signature by violating the terms of the *Code of Alabama* which govern the relationship between partners and members.  At oral argument, the Defendants argued that the terms of the partnership were stated in the unsigned Operating Agreement.

There is no claim for breach of a de facto partnership agreement, the terms of which are supplied by Alabama statute or by an unsigned Operating Agreement.  The claim asserted in the Counterclaim is for breach of an executed Operating Agreement.  The deadline for amending the

17

pleadings in this case was August 15, 2005. Therefore, summary judgment is also due to be GRANTED as to the breach of contract theories raised for the first time in the Defendants' briefs and at oral argument.

### 2. Copyright Infringement

Signature contends that it holds the exclusive copyrights to the plans at issue and that Henderson infringed on its rights by using the plans without permission. Henderson argues that without copyright registration by Signature, this court does not have subject matter jurisdiction over any infringement claims by Signature.

"The registration requirement is a jurisdictional prerequisite to an infringement suit." *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 (11th Cir. 1990). There is no question in this case that Henderson, not Signature, registered the plans at issue. At oral argument, the court expressed the view, with which counsel for the Defendants agreed, that the statute is unambiguous on this point. The court concludes, therefore, that the copyright infringement claim by Signature against Henderson is due to be dismissed for lack of subject matter jurisdiction.

### V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Motions for Summary Judgment filed in this case are GRANTED in part and DENIED in part as follows:

1. The Plaintiff's Motion for Summary Judgment as to any alleged breach of contract claim by Signature (Doc. #30) is DENIED as Moot.

2. The Plaintiff's Motion for Summary Judgment (Doc. #30) is GRANTED as to the breach of contract counterclaim by Alice E. Henderson and Judgment is entered against Alice E. Henderson and in favor of James D. Henderson on the breach of contract claim.

3. Defendant/Intervenor Signature Builders, LLC's copyright infringement claim is dismissed without prejudice for lack of subject matter jurisdiction.

4. Defendants Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC's Motion for Summary Judgment (Doc. #31) is GRANTED as to Plaintiff's claims for conversion, civil conspiracy, and breach of fiduciary duty and Judgment is entered in favor of Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC and against James D. Henderson on those claims.

5. Defendants Alice E. Henderson, Daniel W. Phipps, and Phad Properties, LLC's Motion for Summary Judgment (Doc. #31) is DENIED as to the Plaintiff's copyright infringement claim.

The case will proceed on the Plaintiff's copyright infringement claim, the Defendant Alice E. Henderson's Counterclaims for wrongful dissolution, conversion, and breach of fiduciary duty, and the Defendant/Intervenor Signature Builders, LLC's Counterclaims for breach of fiduciary duty and conversion.

Done this 30th day of October, 2006.

/s/ W. Harold Albritton  
W. HAROLD ALBRITTON  
SENIOR UNITED STATES DISTRICT JUDGE